Evie L. WASHINGTON, Appellant,

v.

STATE FARM FIRE & CASUALTY
COMPANY, Appellee.

No. 92–CV–245.

District of Columbia Court of Appeals.

Argued April 28, 1993.

Decided July 29, 1993.

Vincent A. Butler, with whom Jon A. Frank, Silver Spring, MD, was on the brief, for appellant.

Richard E. Schimel, Bethesda, MD, for appellee.

Before TERRY, STEADMAN, and KING, Associate Judges.

TERRY, Associate Judge:

Evie Washington sued her insurer, State Farm Fire and Casualty Company, seeking a declaratory judgment that her home-owner's insurance policy obligated State Farm to defend her in an action for defamation brought by a third party. The trial court granted summary judgment for State Farm. Washington appeals; we affirm.

I

State Farm issued a standard home-owner's insurance policy to appellant Washington on February 24, 1990. In June 1990 Kevin Ayala, an airline pilot, sued Washington for defamation, alleging in his complaint that Washington had made false statements in a letter about his performance as a pilot and that these statements had injured his professional reputation. On November 5, 1990, Washington forwarded a copy of Ayala's complaint to State Farm and asked State Farm to defend her in accordance with its home-owner's policy.[1] On December 14 a State Farm claims superintendent notified Washington that the company was specifically reserving the right to deny coverage, but that in the meantime (*i.e.,* until it determined whether the policy covered such a claim) she had the right to select her own attorney to defend her in the Ayala suit (which she had already done), and that State Farm would "assume the reasonable cost of the defense provided."

State Farm soon concluded that Washington was not entitled to payment of her defense costs under her homeowner's policy. In a letter dated January 29, 1991, a State Farm representative explained that coverage was denied because the Ayala complaint did not allege bodily injury, property damage, or an "occurrence" as defined by the policy, and because the policy excluded coverage for bodily injury or property damage which was either expected or intended by the insured.[2] Accordingly, State Farm asked Washington to bill it for counsel fees incurred up to that date and advised her that it would not be responsible for legal fees incurred in the future.

The Ayala litigation continued to trial and ultimately ended with a judgment in Washington's favor. Washington then filed this declaratory judgment suit against State Farm, in which the trial court granted State Farm's motion for summary judgment.

II

It is settled law in the District of Columbia that "[t]he respective rights of the parties to an insurance policy must be determined by the contract of insurance." *Oler v. Liberty Mutual Insurance Co.,* 297 A.2d 333, 335 (D.C.1972) (citation omitted). The homeowner's policy issued by State Farm to appellant Washington said that State Farm would "provide a defense at [State Farm's] expense by counsel of [State Farm's] choice" when "a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence...." The policy elsewhere defines the relevant terms in this provision. "Bodily injury" is defined as "bodily harm, sickness or disease"; "property damage" is stated to be "physical damage to or destruction of tangible property, including loss of use of this property"; and an "occurrence" is defined as "an accident, including exposure to conditions, which results in ... bodily injury ... or ... property damage during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence."

██  The scope of an insurer's duty to defend an action against its insured, as distinguished from its obligation to indem-

---

1. The "Liability Coverages" section of the policy contained a provision that State Farm would "provide a defense at [its] expense by counsel of [its] choice" against claims for "bodily injury" or "property damage" within the coverage of the policy.

2. The January 29 letter is not included in the record on appeal, but there appears to be no dispute as to its contents.

nify the insured for any resulting judgment,[3] is

> to be determined by the allegations of the complaint. This obligation is not affected by facts ascertained before suit or developed in the process of litigation or by the ultimate outcome of the suit. If the allegations of the complaint state a cause of action within the coverage of the policy, the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend. In case of doubt such doubt ought to be resolved in the insured's favor.

*Boyle v. National Casualty Co.*, 84 A.2d 614, 615–616 (D.C.1951) (footnotes omitted); *accord, e.g., Beltway Management Co., supra* note 3, 746 F.Supp. at 1149; *Central Armature Works, Inc. v. American Motorists Insurance Co.*, 520 F.Supp. 283, 287 (D.D.C.1980); *Western Exterminating Co. v. Hartford Accident & Indemnity Co.*, 479 A.2d 872, 874 (D.C.1984); *S. Freedman & Sons, Inc. v. Hartford Fire Insurance Co.*, 396 A.2d 195, 197 (D.C.1978).

Ayala alleged in his complaint that Washington had sent a letter to his employer stating that he had violated certain Federal Aviation Administration regulations in his operation of a private aircraft, and that this defamatory act had injured his professional reputation.[4] We must determine whether a claim for defamation alleging this type of injury is a claim within the coverage of Washington's homeowner's policy—*i.e.*, for "bodily injury or property damage ... caused by an occurrence"—which would trigger State Farm's contractual duty to defend her.[5] *Western Exterminating Co., supra*, 479 A.2d at 874.

■■■ To recover in an action for defamation, a plaintiff must prove that the statement in question was false, was defamatory, and was published with some degree of fault. *Moss v. Stockard*, 580 A.2d 1011, 1022 (D.C.1990); *Harrison v. Washington Post Co.*, 391 A.2d 781, 783 (D.C.1978). In the District of Columbia, "[a] statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss, supra*, 580 A.2d at 1023 (citations omitted); *accord, e.g., Allstate Insurance Co. v. LaPore*, 762 F.Supp. 268, 271 (N.D.Cal.1991) (defining defamation as "an impairment of a 'relational' interest, since it involves the plaintiff's interest in his or her reputation in the community and good name" (citations omitted)). This definition is consistent with the type of injury Ayala alleged in his complaint, namely, injury to his "reputation as a professional pilot."

■■ Washington's insurance policy defines "bodily injury" as "bodily harm, sick-

---

**3.** For a brief discussion of the difference, *see Salus Corp. v. Continental Casualty Co.*, 478 A.2d 1067, 1069–1070 (D.C.1984); *see also Beltway Management Co. v. Lexington–Landmark Insurance Co.*, 746 F.Supp. 1145, 1149 (D.D.C.1990); *Wrecking Corp. of America, Virginia, Inc. v. Insurance Co. of North America*, 574 A.2d 1348, 1351 (D.C.1990) ("while the duty to defend is defined by the complaint ... the policy ... defines what occurrences are covered" (citations omitted)).

**4.** Washington's brief states (with no support in the record, which is very meager) that Ayala testified at trial that Washington's letter also caused him to suffer mental anguish, to lose sleep, and to pull out his hair. Assuming that he did so testify, these additional allegations were not made in the complaint and are therefore of no consequence in our analysis of State Farm's duty to defend. *E.g., Boyle, supra*, 84 A.2d at 615; *see* Super.Ct.Civ.R. 9(g) ("When items of special damage are claimed, they shall be specifically stated"); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1310 (2d ed. 1990); *cf. Fowler v. Curtis Publishing Co.*, 86 U.S.App.D.C. 349, 182 F.2d 377 (1950).

**5.** Washington maintains, relying on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), that we must take into account the full range of damages *potentially* available in an action for defamation, including damages for "personal humiliation, mental anguish, and suffering." Our case law dictates otherwise. We look only to whether the "allegations of the complaint state a cause of action within the coverage of the policy." *S. Freedman & Sons, supra*, 396 A.2d at 197 (quoting *Boyle, supra*, 84 A.2d at 615). In other words, our focus must always be on the allegations of the complaint. The duty to defend arises only when those allegations state a legal claim—since otherwise there is nothing to defend—that is within the coverage of the policy.

ness, or disease." [6] The injury one suffers as a result of a defamatory statement, however, is something entirely different: an injury in one's trade, profession, or community standing, or one that lowers the injured party in the estimation of the community. We therefore hold that, as a matter of law, injury to reputation cannot be a "bodily injury" as that term is defined in a homeowner's policy such as the one before us here. *See Moss, supra,* 580 A.2d at 1021 n. 19 ("the injury in defamation cases [is] 'economic' and not 'physical' " (citation omitted)). Our conclusion is consistent with those of other courts considering this precise question. *See, e.g., Allstate Insurance Co. v. LaPore, supra,* 762 F.Supp. at 271 (involving a substantially identical policy definition of "bodily injury"); *State Farm Fire & Casualty Co. v. Hiermer,* 720 F.Supp. 1310, 1316 (S.D.Ohio 1988) (involving identical policy language), *aff'd,* 884 F.2d 580 (6th Cir.1989); *Allstate Insurance Co. v. Diamant,* 401 Mass. 654, 657, 518 N.E.2d 1154, 1156–1157 (1988) ("bodily injury" is limited to physical injury and does not include non-physical harm); *Artcraft of New Hampshire, Inc. v. Lumbermen's Mutual Casualty Co.,* 126 N.H. 844, 845, 497 A.2d 1195, 1196 (1985) ("bodily injury" is narrower than "personal injury" and does not include non-physical harm); *Lumbermen's Mutual Casualty Co. v. United Services Automobile Ass'n,* 218 N.J.Super. 492, 500, 528 A.2d 64, 68, (1987) ("bodily injury" does not include injury to reputation).

■ For much the same reason, Washington's argument that the injury flowing from a defamatory statement amounted to "property damage," another insured risk under her homeowner's policy, is also untenable. "Property damage" is defined in the State Farm policy as "physical damage to or destruction of tangible property, including loss of use of the insured's residence." A person's reputation is, at most, a form of intangible property, somewhat like the "goodwill" associated with a business and recognized in the law as an intangible asset.[7] Thus, since the Ayala complaint alleged only damage to reputation, and since Washington's policy insured only against damage to "tangible" property, there was no basis upon which to find liability here. *See Western Exterminating Co., supra,* 479 A.2d at 875 (" '[s]trictly economic losses, such as ... loss of good will ... are not damage or injury to tangible property and do not constitute the requisite property damage' " (citation omitted)); *see also Hiermer, supra,* 720 F.Supp. at 1315 (employment rights are not "tangible" property under homeowner's policy).[8]

■ Washington's remaining contention merits only the briefest discussion. She contends that State Farm did not adequately reserve its right to decline to defend her in the Ayala lawsuit. Her argument is that, while State Farm made it abundantly clear in its December 14 letter that it reserved its right not to pay any judgment against her, State Farm failed to reserve its right not to defend her. In fact, however, the December 14 letter speaks in terms of a reservation of right to deny "coverage" under the policy. We think it reason-

---

6. Unless it is "obvious" that the terms used in an insurance contract are "intended to be used in a technical connotation," we must construe them consistently with "the meaning which common speech imports." *Pennsylvania Indemnity Fire Corp. v. Aldridge,* 73 App.D.C. 161, 162, 117 F.2d 774, 775 (1941); *accord, Belland v. American Automobile Insurance Co.,* 101 A.2d 517, 518 (D.C.1953); *Potomac Electric Power Co. v. California Union Insurance Co.,* 777 F.Supp. 968, 974 (D.D.C.1991). We find this policy definition of "bodily injury" consistent with the meaning which common speech imports.

7. *See, e.g.,* BLACK'S LAW DICTIONARY 808 (6th ed. 1990) (defining "intangible asset" as "[a] non-physical, noncurrent asset which exists only in connection with something else, such as the goodwill of a business").

8. State Farm argues in the alternative that it had no duty to defend Washington because defamation is an intentional tort, and therefore the sending of the defamatory letter could not be an "occurrence" as defined in the policy (*i.e.,* an "accident"). Under the law of the District of Columbia, however, defamation may be either intentional or negligent. *E.g., Moss v. Stockard, supra,* 580 A.2d at 1022 n. 23. Consequently, this alternative argument is without merit.

able to conclude that the term "coverage" includes the duty to defend as well as the duty to indemnify, since these are the operative risks against which the policy is designed to protect. We hold, therefore, that State Farm adequately preserved its right to deny coverage for defense costs incurred in the Ayala litigation.

For these reasons, the judgment in favor of State Farm is

*Affirmed.*