AMERICAN CONTINENTAL
INSURANCE CO.,
Appellant,

v.

Manoochehr POOYA, M.D., Appellee.

Nos. 93–CV–784, 93–CV–1148.

District of Columbia Court of Appeals.

Argued Oct. 27, 1994.
Decided Oct. 5, 1995.

Lee T. Ellis, Washington, DC, for appellant.

William J. Bethune, Washington, DC, for appellee.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and LEVIE,* Associate Judge of the Superior Court of the District of Columbia.

LEVIE, Associate Judge:

A civil action was commenced by Dr. Manoochehr Pooya ("Pooya") against his malpractice insurance carrier, American Continental Insurance Company ("ACIC"), seeking a declaratory judgment that ACIC had a duty to defend him in a tort action filed against him. Both parties filed cross-motions for summary judgment on the issue of ACIC's duty to defend. Judge von Kann granted summary judgment in favor of Pooya, ordering ACIC to defend him in the underlying tort action. Judge von Kann also ordered ACIC to indemnify Pooya for reasonable attorneys' fees and expenses incurred by him in defending the tort lawsuit from the inception of the tort litigation to the time ACIC assumed responsibility for his defense. Subsequently, Judge Rankin awarded attorneys' fees and expenses to Pooya, and ACIC moved to vacate that award. Judge Rankin denied the motion to vacate.

ACIC appeals from the grant of summary judgment and the denial of its motion to vacate. Finding ACIC's arguments unpersuasive, we affirm both rulings by the trial court.

## I.

ACIC issued a professional liability insurance policy to Pooya which provided for the defense of certain suits for damages brought against Pooya. The policy excluded from coverage any claim arising out of any fraudulent, criminal or malicious acts, and for occurrences that were expected or intended by Pooya that resulted in injury and related damages.[1]

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

1. The insurance policy provided, in pertinent part:

### I. COVERAGES
#### IMPORTANT NOTICE
This is a claims made contract of insurance. Coverages A, B & C apply only to claims arising out of **occurrences** taking place subsequent to the retroactive date stated in the Declarations for the particular coverage involved and for which claim is first made against the **insured** and reported to **us** during the **certificate period.**
**COVERAGE A, PHYSICIANS, SURGEONS & DENTISTS PROFESSIONAL LIABILITY**
**We** will pay on **your** behalf, to the extent not otherwise excluded under Section VIII of this certificate, all sums which you shall become legally obligated to pay as damages because of **injury** arising out of you, or any person for those acts or omissions **you** are legally responsible for, having rendered or having failed to render **professional services** subsequent to the retroactive date stated in the Declarations and for which claim is first made against **you** and reported to **us** during the **certificate period.** . . .
**VI. DEFENSE SETTLEMENT SUPPLEMENTARY PAYMENTS**

As respects the coverages afforded by the terms of this certificate, **we** shall have the right and duty to defend, with defense counsel selected by **us**, any claim made or suit brought seeking damages against the **insured**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit we deem expedient, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of **our** liability has been exhausted by payment of judgments or settlements.
#### VIII. EXCLUSIONS
This insurance does not apply:
Under Coverage A, B or C
7. to liability of the **insured** for any claim arising out of any fraudulent, criminal or malicious act . . .
#### IX. DEFINITIONS
6. **Injury** means **bodily injury** and **personal injury.**
11. **Occurrence** means an accident, error or omission neither expected nor intended by the **insured** which results in **injury** and gives rise to damages arising out of the coverages described in Section I.
13. **Professional services** means service performed in the members' principal practice as stated on the Declarations, including service

A lawsuit was filed against Pooya on November 14, 1990, by Dr. Elias J. Gerth and other plaintiffs, alleging tortious conduct arising from Pooya's participation as chairman of an ad hoc committee of Capitol Hill Hospital ("CHH"). Pooya was sued in his individual capacity and in his capacity as chairman of the committee. The alleged tortious conduct involved the issuance by Pooya of a Chairman's Report in February 1990. Dr. Gerth and the other plaintiffs claimed the Report falsely accused them of providing improper, unsupervised and unauthorized medical treatment and fraudulent billing. The Gerth complaint also alleged that the Chairman's Report was distributed to the media, resulting in media reports critical of the hospital program. In response to the Report, CHH issued a letter of censure to Pooya criticizing his actions as irresponsible and his allegations as undocumented.

The Gerth complaint contained claims for libel (Count 1), slander (Count 2) and intentional infliction of emotional distress (Count 3).[2] Counts 1 and 2 contained allegations that Pooya "maliciously, knowingly and intentionally" made false and defamatory statements about the plaintiffs, and/or that he wrote the Report "with reckless disregard as to truth or falsity" of the statements contained therein. Count 3 alleged that Pooya engaged in "intentional and malicious publication of the false and defamatory matter...."

Pooya forwarded a copy of the Gerth complaint to ACIC on November 20, 1990. After reviewing the complaint, ACIC informed Pooya on December 6, 1990, that the actions complained of were not covered by the insurance contract, because the policy excluded coverage for intentional and malicious acts.[3] Accordingly, ACIC indicated that it would not defend the action.

Pooya then retained the firm of Ross, Marsh, Foster, Myers & Quiggle ("Ross, Marsh")[4] to handle his defense to the tort action and to file a lawsuit for declaratory judgment and damages against ACIC. In the declaratory judgment action, Pooya sought a ruling that the insurance policy required ACIC to defend him in Dr. Gerth's tort suit, and that ACIC was obligated to pay Pooya damages for defense costs, including attorneys' fees, incurred by him as a result of ACIC's refusal to defend the tort action.

In the declaratory judgment action, both parties filed cross-motions for summary judgment on the issue of ACIC's duty to defend. Judge von Kann granted summary judgment in favor of Pooya on the issue of the duty to defend, holding that ACIC was obligated under the professional liability policy to defend Pooya on Counts 1, 2 and 3, as well as the professional negligence claim added in an amended complaint.[5] The court concluded that the obligation to defend commenced at the beginning of the lawsuit for Counts 1, 2 and 3, and on September 12, 1991, for the newly-added negligence count

---

as: (a) a member of any committee of a licensed acute care hospital; (b) a member of a committee of any professional medical association or society; (c) a member of a legally constituted professional standards review organization.
(Emphasis in original).

2. The complaint included a fourth count against Pooya for intentional interference with contractual relations, but Judge von Kann concluded, in a September 12, 1991 order, that the fourth count did not fall within the scope of the policy's coverage. ACIC therefore had no duty to defend as to that count. A fifth count also was included in the complaint, but did not pertain to Pooya.

3. According to correspondence between ACIC and Pooya, ACIC denied coverage on the grounds that plaintiffs alleged that Pooya acted in an intentional and malicious manner, and

made no allegations against Pooya concerning negligence.

4. During the course of this litigation, Ross, Marsh underwent personnel changes not pertinent here. The firm is referred to as "Ross, Marsh" throughout this opinion for ease of reference and consistency.

5. In the Gerth tort action, the trial court allowed amendment of the Gerth complaint to add a Sixth Count, alleging professional negligence against Pooya.. The court stated that it was permitting the amendment "to make absolutely explicit that ... Gerth is alleging, among other things, that he was damaged by negligence of Pooya." The court stressed that adding the new negligence count did not mean there was not a negligence claim against Pooya in the original complaint.

(Count 6). Judge von Kann explained that ACIC had a duty to defend the initial counts (1–3) because:

> relief could be granted under Counts 1 and 2 if Dr. Pooya negligently published false and defamatory statements about Dr. Gerth without malice or an intent to cause injury, [and] under Count 3 if Dr. Pooya recklessly (but without malice or intent to harm) engaged in outrageous conduct which caused mental distress to Dr. Gerth....

Lastly, Judge von Kann directed that ACIC indemnify Pooya for reasonable attorneys' fees and expenses incurred by him in defending Counts 1, 2 and 3 of the tort complaint from the inception of the tort litigation to the time ACIC assumed responsibility for Pooya's defense of that action.

Pursuant to the court's order, ACIC assumed defense of the covered claims on November 18, 1991. Subsequently, Ross, Marsh filed a Motion for Award of Attorneys' Fees and Expenses for the period beginning with the filing of the tort action and ending November 18, 1991, when ACIC took over defense of the tort action. The motion also sought fees incurred in litigating the declaratory judgment issue and fees relating to work necessary to recover an award of attorneys' fees.

Following oral arguments on the motion for attorneys' fees, Judge Rankin ruled that ACIC was liable to Pooya in the amount of $136,673.09. ACIC filed a notice of appeal challenging both Judge von Kann's grant of summary judgment and Judge Rankin's award of fees and expenses.[6]

Also, pursuant to Super.Ct.Civ.R. 60(b), ACIC filed a motion to vacate the order awarding fees and expenses on the basis of newly discovered evidence. The basis for the motion to vacate was ACIC's receipt on June 11, 1993, of a letter, dated May 25, 1993, written by Pooya to ACIC indicating that Ross, Marsh did not represent Pooya after September, 1991. Thus, ACIC asserted that the award of attorneys' fees should be vacated because the award was calculated on erroneous factual information regarding the period of time during which Ross, Marsh represented Pooya in the tort action.

ACIC noted that the issue of Ross, Marsh's continued representation of Pooya had arisen on two occasions between December, 1992 and June, 1993 when Pooya made representations to ACIC relating to Ross, Marsh. In each instance, ACIC sought and received from Ross, Marsh clarification and confirmation concerning their representation of Pooya. When ACIC did not receive any response from Ross, Marsh regarding the May 25, 1993 letter from Pooya, ACIC concluded that Ross, Marsh's representation of Pooya had ceased in September, 1991.[7]

Pooya acknowledged that Ross, Marsh was requested to withdraw from the tort action after ACIC assumed his defense, but noted that Ross, Marsh was not requested to withdraw from the declaratory judgment action. At a hearing before Judge Rankin, Pooya represented that Ross, Marsh was handling the declaratory judgment action with his full knowledge and authority at all times. ACIC did not dispute this representation.

In denying the motion to vacate, Judge Rankin concluded that ACIC failed to demonstrate that there was new evidence which, through due diligence and competent legal work, could not have been discovered prior to issuance of the order regarding the fee award.

Having presided over the underlying tort case, as well as the fee dispute, Judge Rankin recalled that there was "quite a bit of litigation that lasted throughout 1992 where Ross, Marsh was present and participating and vigorously representing Dr. Pooya." Judge Rankin did not credit ACIC's assertion that the "newly discovered" evidence could not have been discovered by ACIC's lawyers during the course of litigating the

---

6. Although Pooya questioned in the trial court the issue of the timeliness of the filing of the notice of appeal in connection with the denial of ACIC's motion to vacate, Pooya does not raise the issue, and we are satisfied that the appeal is timely.

7. ACIC was unable to produce any documentation, other than the May 25 letter itself, purporting to indicate that Pooya terminated the services of Ross, Marsh in September 1991.

fee award. The court stated that "it is unthinkable" that, in the course of extensive litigation on the fee issue, ACIC's counsel "would not have discovered something as central to the issue of a fee reimbursement as the existence of a relationship between the client and the law firm. That would have ended the whole thing."

Consequently, Judge Rankin concluded that the letter did not comport with the facts. Therefore, he rejected the argument that the purported truth of the facts in Pooya's May 25 letter could not have been discovered earlier, had ACIC acted with due diligence. Moreover, the court noted that it would be extremely unusual for Ross, Marsh to be permitted to withdraw from the case absent an affirmative statement from Pooya that he wished to proceed *pro se*. The court also concluded that Pooya's retainer agreement with Ross, Marsh in November, 1990, conferred broad authority on Ross, Marsh to represent him in litigation against ACIC, and that there were no contrary instructions from Pooya to his lawyers.

## II.

### MOTION FOR SUMMARY JUDGMENT

Summary judgment should be rendered only when "there is no genuine issue as to any material fact" and when it is clear that "the moving party is entitled to judgment as a matter of law." D.C.Super.Ct.Civ.R. 56(c); *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc). In reviewing a grant of summary judgment, this court "must independently review the record to determine whether genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law." *Beckman v. Farmer*, 579 A.2d 618, 626–27 (D.C.1990). In so doing, this court reviews the record in the light most favorable to the non-movant, and any doubt regarding the existence of a factual dispute is to be resolved against the movant. *Id.* at 627.

The burden of proof required to satisfy the summary judgment standard rests with the moving party who bears "the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." *Griva v. Davison*, 637 A.2d 830, 836 (D.C.1994); *see also Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). We consider the summary judgment issues on appeal in light of these principles and the controlling substantive law.

ACIC argues that Judge von Kann erred in granting summary judgment in favor of Pooya, and ordering ACIC to defend the tort lawsuit pursuant to the professional liability insurance policy issued by ACIC, because the tort complaint did not state a cause of action within coverage of the policy. ACIC contends that, in analyzing the allegations of the tort complaint, we should look only to the literal wording of the complaint.

■ This court must look to whether the allegations included in the complaint state a cause of action within the policy's coverage, and whether the allegations raise the possibility of coverage. *See Washington v. State Farm Fire & Casualty Co.*, 629 A.2d 24, 26 n. 5 (D.C.1993); *Western Exterminating Co. v. Hartford Accident & Indem. Co.*, 479 A.2d 872, 874 (D.C.1984). In applying these principles, we reject ACIC's contention that we look solely to the literal wording of the complaint and thereby disregard claims that clearly are included within the alleged causes of action.[8] Rather, we conclude that it is appropriate to examine the complaint for all plausible claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy. *Washington, supra*, 629 A.2d at 25–26; *see also Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168,

---

8. Strict application of ACIC's position arguably would inappropriately narrow an insurer's duty to defend. For example, the insertion by plaintiff's counsel of the terms "maliciously or inten-tionally" in any complaint alone would eliminate a duty to defend under a policy such as the one at issue here.

176 (1966) (citations omitted); *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir.1970).[9]

Whether ACIC was obligated to defend Pooya turns on interpretation of both the contract terms and the allegations in the complaint. The law in this jurisdiction long has been clear:

> If the allegations of the complaint state a cause of action within the coverage of the policy the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend.

*S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.*, 396 A.2d 195, 197 (D.C.1978) (quoting *Boyle v. National Casualty Co.*, 84 A.2d 614, 615–16 (D.C.1951)). As a general principle, the focus "must always be on the allegations of the complaint." *Washington, supra*, 629 A.2d at 24. To be sure, the obligation to defend " 'is not affected by facts ascertained before suit or developed in the process of litigation or by the ultimate outcome of the suit. If the allegations of the complaint state a cause of action within the coverage of the policy, the insurance company must defend.' " *Washington, supra*, 629 A.2d at 26 (quoting *Boyle, supra*, 84 A.2d at 615–16).

■ However, if it is possible that the allegations of a complaint would bring it within coverage of the policy, the insurer is obligated to defend, even if it ultimately is not required to pay a judgment. *Sherman v. Ambassador Ins. Co.*, 216 U.S.App.D.C. 93,

101, 670 F.2d 251, 259 (1981). " 'In case of doubt [regarding a duty to defend] such doubt ought to be resolved in the insured's favor.' " *S. Freedman & Sons, supra*, 396 A.2d at 197 (quoting *Boyle, supra*, 84 A.2d at 615–16); *see also Western Exterminating Co., supra*, 479 A.2d at 874 (the question is whether the tort complaint raises the possibility of coverage).[10]

The duty to defend, however, should be distinguished from the duty to pay a judgment. *Salus Corp. v. Continental Casualty Co.*, 478 A.2d 1067, 1069–70 (D.C.1984). The longstanding rule in the District of Columbia is that " 'whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts.' " *Id.* (quoting *S. Freedman & Sons, supra*, 396 A.2d at 197). Therefore, " 'if the allegations of a plaintiff's complaint may bring the claim within the coverage of the defendant's policy, the insurance company must honor its duty to defend, even if ultimately relieved of any duty to indemnify.' " *Id.* at 1070 (quoting *Sherman, supra*, 216 U.S.App.D.C. at 100–01, 670 F.2d at 258–59).

■ In the tort complaint,[11] Counts 1 and 2 alleged that Pooya maliciously, knowingly, wilfully and/or recklessly libeled and slandered the plaintiffs. To recover in an action alleging libel or slander, the plaintiff must prove that a statement was false, defamatory and published with some degree of fault. *Washington, supra*, 629 A.2d at 26. Defamation may be either intentional or negligent.

---

**9.** Where amendment of the complaint could not possibly establish a cause of action within the terms of the insurance policy, the insurer is not obligated to defend. *See, e.g., Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484, 488–89 (1959) (if amendment could possibly establish a cause of action, there is a duty to defend).

**10.** Other jurisdictions similarly focus on the allegations included in the complaint in determining whether there is a duty to defend. *See, e.g., Pow-Well Plumbing & Heating, Inc. v. Merchants Mut. Casualty Co.*, 195 Misc. 251, 89 N.Y.S.2d 469, 473 (1949) (the duty to defend is determined by the terms of the policy and by the complaint in the negligence action against the insured; the insurer must defend if the complaint shows a claim within the policy's coverage); *Leonard v.*

*Maryland Casualty Co.*, 158 Kan. 263, 146 P.2d 378, 380 (1944) ("the duty of an insurer to defend an action for damages is not measured by the proof which may be adduced at the trial nor by the outcome of the litigation, but by the allegations of the petition or complaint in the action and by the terms and provisions of the insurance contract"); *Lee v. Aetna Casualty & Sur. Co.*, 178 F.2d 750, 753 (2d Cir.1949) (when the complaint comprehends an injury which may be within the policy, the promise to defend includes it); *Baker v. American Ins. Co. of Newark, N.J.*, 324 F.2d 748, 750 (4th Cir.1963) ("an insurer's duty to defend an action in accordance with the terms of its policy is to be gathered from the face of the complaint").

**11.** Ultimately, the tort claims against Pooya were dismissed with prejudice by plaintiffs.

Id. at 27 n. 8; *Moss v. Stockard,* 580 A.2d 1011, 1022 n. 23 (D.C.1990).

■ Thus, if Pooya's conduct was reckless, and not malicious, knowing or wilful, his actions would be covered under the insurance policy. Similarly, if liability were to rest on negligent publication, this would be covered under the disputed policy. Consequently, at the time the tort suit was initiated against Pooya, it was possible under Counts 1 and 2 that he could be liable for defamation without intentional acts being proven. Therefore, the allegations of Counts 1 and 2 were within the scope of the policy.

■ Count 3 alleged a claim for intentional infliction of emotional distress. The tort of intentional infliction of emotional distress consists of three elements: "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984) (quoting *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982)); *Washington v. John T. Rhines Co.,* 646 A.2d 345, 349 (D.C. 1994). Recklessness can be inferred from the degree of outrageousness of the acts committed. *Howard Univ., supra,* 484 A.2d at 985; *Jackson v. District of Columbia,* 412 A.2d 948, 956–57 (D.C.1980) (emphasis added) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1985)). Since recklessness is sufficient to establish liability for intentional infliction of emotional distress, and the insurance policy does not exclude coverage for reckless acts, there exists the potential for liability within the policy coverage under the alleged tort of intentional infliction of emotional distress.

■ Furthermore, the policy does not contain language excusing ACIC from defending suits alleging intentional or malicious acts. There is a "malicious acts" exclusion in the policy, but this refers to the duty to pay a judgment if the insured is found to be liable, and not to the duty to defend. Since the exclusionary language applies only to ultimate liability, and not to defense of the claims, the language modifies only the insur-er's duty to pay a judgment, and does not limit the insurer's duty to defend. Indeed, the policy states that ACIC must defend a lawsuit "even if any of the allegations of the suit are groundless, false or fraudulent...."

In this instance, the allegations in the underlying tort complaint unquestionably raised the possibility of coverage within the scope of the policy issued by ACIC. Accordingly, ACIC had a duty to defend Pooya, even if the insurer ultimately were relieved of any duty to pay a judgment. The trial court did not err in granting summary judgment in favor of Pooya with regard to ACIC's duty to defend.

### III.

### MOTION TO VACATE

■ ACIC moved to vacate the fee award decision pursuant to Super.Ct.Civ.R. 60(b). "The denial of a Rule 60(b) motion is reviewable only for abuse of discretion." *Johnson v. Lustine Realty Co.,* 640 A.2d 708, 709 (D.C.1994), and cases there cited. We find no abuse of discretion in the denial of ACIC's motion.

"Where reconsideration [or vacation] is sought on the basis of 'newly discovered evidence,' the movant must demonstrate [that the newly discovered evidence] could not have been discovered in advance of trial and would likely produce a different result at a new trial." *Forgotson v. Shea,* 491 A.2d 523, 528 (D.C.1985) (citations omitted); *see also Merrell Dow Pharmaceuticals v. Oxendine,* 649 A.2d 825, 831–32 (D.C.1994); *Gause v. C.T. Management, Inc.,* 637 A.2d 434, 437 n. 3 (D.C.1994). Newly discovered evidence does not encompass evidence not previously discovered because of "lack of due diligence" or evidence that "was readily capable of being learned ... in the course of conducting pretrial discovery...." *See Oxendine v. Merrell Dow Pharmaceuticals,* 563 A.2d 330, 334 (D.C.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

In ruling on the motion with regard to the primary fee award, Judge Rankin's analysis properly centered on whether ACIC demonstrated that there was new evidence that could not reasonably have been discovered

prior to his ruling on the matter through competent legal work, and whether such evidence would have produced a different result had it been discovered prior to issuance of the order granting attorneys' fees. Judge Rankin drew on his own recollections from hearing the underlying tort case in recognizing that there was extensive litigation in 1992, during which Ross, Marsh was present to represent Pooya. Consequently, the letter from Pooya did not conform with the facts of the case as he recalled them.

Judge Rankin concluded that ACIC failed to demonstrate that its motion to vacate was based upon what was truly "newly discovered evidence" that could not have been discovered by ACIC through due diligence prior to the issuance of the court's order awarding fees. In finding that the evidence was in fact discoverable, Judge Rankin reasoned that such information should have been discovered by ACIC's lawyers during the course of litigating the fee award. The trial court found that ACIC undertook an "extensive investigation" and "vigorously investigated the facts underlying the representation of Ross, Marsh...." Judge Rankin was unwilling, in the context of having presided over such a hotly contested hearing relating to the award of attorneys' fees, to credit at face value Pooya's letter to ACIC suggesting that Ross, Marsh no longer represented him. Notably absent from the record before Judge Rankin was any indication that Pooya had ever informed Ross, Marsh that their services no longer were required as of September, 1991.

Additionally, Judge Rankin found that Pooya's retainer agreement with Ross, Marsh in November, 1990 conferred broad authority to represent him in litigation against ACIC,[12] and that there was no evidence of contrary instructions from Pooya to his lawyers purporting to limit this grant of authority. Indeed, the retaining of Ross, Marsh to represent Pooya in the declaratory judgment action was not affected by substitution of counsel for Ross, Marsh in the tort action.

**12.** The retainer agreement also authorized Ross, Marsh to seek primary and secondary (relating to

## IV.

Having found that the grant of summary judgment was correct and that the denial of the motion to vacate was not an abuse of discretion, both orders are

*Affirmed.*

litigation to recover fees) attorneys' fees.