**COMMONWEALTH LLOYDS INSURANCE CO., et al., Plaintiffs,**

v.

**MARSHALL, NEIL & PAULEY, INC., et al., Defendants.**

**Civil Action No. 95–cv–0949 (JLG).**

United States District Court, District of Columbia.

Dec. 22, 1998.

---

James R. Eyler, Miles and Stockbridge, Baltimore, MD, Christopher R. Carroll, John P. Gilfillan, Carroll, McNulty & Kull LLC, Far Hills, NJ, for Commonwealth Lloyds Insurance Co.

Christopher Gales Hoge, Crowley, Hoge & Fein, P.C., Washington, DC, Daniel H. Johnston, Jr., Brown, Parker & Leahy, Houston, TX, for Marshall, Neil & Pauley, Inc., Amber/Booth Co., Inc.

Thomas Bentley Dorrier, Donald A. Laffert, Karen Simonek Karas, Washington Metropolitian Area Transit Authority, Washington, DC, for Washington Metropolitian Area Transit Authority.

Charles Andrea Patrizia, Scott Mitchell Flicker, Paul, Hastings Janofsky & Walker, L.L.P., Washington, DC, for Norair Engineering Corp., Slattery Assoc., Inc.

Robert Knight Cox, Watt, Tieder, Hoggar & Fitzgerald, L.L.P., McLean, VA, Andrew Martin Reidy, Robert L. Carter, McKenna & Cuneo, NW, Washington, DC, for Dillingham Construction N.A., Inc., S.A. Healey Co.

Scott Mitchell Flicker, Paul, Hastings, Janofsky & Waliker, L.L.P., Washington, DC, for James McHugh Construction.

Scott Mitchell Flicker, Paul, Hastings, Janofsky & Waliker, L.L.P., Washington, DC, Robert Michael Fitzgerald, Mark A. Sgarlata, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., McLean, VA, Andrew Martin Reidy, Robert L. Carter, McKenna & Cuneo, L.L.P., Washington, DC, for Granite Construction Co., S.J. Groves & Sons Co.

Scott Mitchell Flicker, Paul, Hastings, Janofsky & Waliker, L.L.P., Washington, DC, for Massman Construction Co., Expressway Constructors.

Robert Knight Cox, Watt, Tieder, Hoggar & Fitzgerald, L.L.P., McLean, VA, for Nello L. Terr, Co.

Paul Wesley Killian, Sutherland Asbill & Brennan, L.L.P., Washington, DC, for S&M Constructors, Inc., Traylor Bros., Inc.

Christopher M. McNulty, King & King, L.L.P., New York City, for Mergentime Corp., Arundel Corp.

Cynthia T. Andreason, Leboeuf, Lamb, Greene & Macrae, L.L.P., Washington, DC, for Delta Lloyds Ins. Co.

Clifford Bruce Hendler, Robert L. Willmore, Crowell & Moring, L.L.P., Washington, DC, for the Insurance Co. of North America, Century Indemnity Co.

Max Higgins Lauten, Kramon & Graham, Baltimore, MD, for Travelers Casualty and Surety Co.

Robert Edward Scott, Jr., Semmes, Bowen & Semmes, Batimore, MD, for National Union Fire Ins. Co. of Pittsburgh.

Edward J. Lopata, Tydings & Rosenberg, L.L.P., Baltimore, MD, for Lumbermen's Mutual Casuality Co.

## MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are three motions for summary judgment brought by certain Defendants [1] ("the contractors") against Defendant Lumbermens Mutual Casualty Company ("Lumbermens"). The moving Defendants seek a ruling that Lumbermens's has a duty to defend them in this action and to pay all associated legal fees and costs both for these proceedings as well as any pre-filing proceedings. Lumbermens opposes these motions and the issues are now ripe for disposition. For the reasons that follow, the Court grants the motions for summary judgment on the basis that the pleadings and the record demonstrate that the duty to defend has been triggered.

### BACKGROUND

This multidefendant action has its roots in one of this regions proudest and most pervasive engineering accomplishments: the Washington Metro rail system. Designed in the 1960's and still under construction today, the subway system carries thousands of passengers each day and is an integral part of this area's delicate transportation network. The undertaking itself has been administered by the Washington Metropolitan Area Transit Authority ("WMATA"), which is responsible not only for running the system, but for building it as well. In this role, WMATA has hired numerous contractors and subcontractors over the years including the Defendant contractors in this case.

---

1. The following groups of Defendants each filed a separate motion: 1) Granite Construction Company, S.J. Groves & Sons Company, Dillingham Construction Company, N.A., Inc. and S.A. Healy Company; 2) Norair Engineering Corpo-

ration, Massman Construction Company, Peter Kiewit Sons' Co., Fred J. Early, Jr., Co., Inc., G.T. Group Inc., Expressway Contractors and Moore Brothers Company, Inc.; and 3) J.F. Shea Co., Inc. on behalf of Shea–Ball and P & Z Shea.

With such a massive undertaking, it was perhaps inevitable that problems would arise. Anticipating such problems, WMATA purchased insurance from Lumbermens for matters relating to construction of the subway system ("the policy"). The policy period began on July 30, 1971, continuing annually thereafter, and includes comprehensive general liability coverage and workers compensation insurance. The coverage also includes a duty on the part of Lumbermens to defend and pay the costs of defense incurred under certain circumstances (now at issue before the Court) for those covered.

Of the contractors hired by WMATA to build the subway system, many were hired for construction of track beds and stations, while others, with more specialized knowledge were hired to provide and install various features meant to make this one of the most technologically advanced subways in the world. In this case, it was the Defendant contractors who were hired to provide and install a noise dampening system for the track bed in several stations. Contractors Stat.Mat. Facts ¶¶ 9–32. The design contemplated a system of "floating" concrete slabs, laid beneath the running rails, that would absorb vibration and noise of the trains running over them. The slabs were said to be "floating," because they were to rest atop shock absorbing isolation pads. *Id.*, ¶ 8. The pads were constructed of a polyurethane type composite by a company known as Amber Booth, through a subcontracting arrangement with the Defendant contractors. *Id.*

Sometime after the work had been completed WMATA officials discovered that the floating slabs had settled in a way that caused the track bed surface to become uneven in those places where the isolation pads were located. *Id.*, ¶¶ 10, 11, 12, 18, 19, 20, 22, 23, 24, 26, 27, 28, 30, 31, 32. Subsequent review by WMATA's Contracting Officer and others determined that the isolation pads were defective insofar as they had become compressed (from three inches to one inch) over time under the weight of the concrete

and, as a result, the pads lost their noise and vibration attenuation properties.[2] *Id.* This compression also was found to be responsible for the uneven settling of the track bed. *Id.*

As a result WMATA allegedly was forced to undertake costly remedial measures to correct this problem. *Id.*, ¶ 32. The underlying action seeks a declaration from the Court concerning what, if any, obligations, the Plaintiff insurance companies owe to the numerous Defendants. For their part, the contractors now seek a ruling that the insurance policy, purchased by WMATA, covers their defense in this case and in the pre-filing administrative actions.

## DISCUSSION

### A. Summary Judgment

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the material presented in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and resolve all doubts as to facts or the existence of facts against the moving party. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

At issue here is whether the terms of the policy provide coverage for these Defendants given the allegations at issue.

### B. Duty to Defend Standard

The duty of an insurance provider to defend against a claim brought against a covered individual arises from the insurance policy itself and the allegations at issue. *Continental Cas. Co. v. Cole,* 809 F.2d 891, 895 (D.C.Cir.1987). This duty, construed

---

**2.** With regard to the cause of the compression, it is alleged that a polyester-type polyurethane was used for the pads rather than the more durable polyether-type polyurethane and, in any event, core testing revealed a high level of sulfur indicating that an improper curing method had been used. Def. Shea, Ex. "C" at 4, ¶ 6.

broadly, extends beyond the duty to indemnify and requires defense of all claims even if only part of the claims fall within the policy. *Beltway Management Co. v. Lexington–Landmark Ins. Co.,* 746 F.Supp. 1145, 1149 (D.D.C.1990); *Washington Occupational Health Assocs., Inc. v. Twin City Fire Ins. Co.,* 670 F.Supp. 12, 16 (D.D.C.1987). In determining whether the duty applies, the insurance policy must be compared to the allegations of the pleadings. *Interstate Fire & Cas. Co. v. 1218 Wisconsin, Inc.,* 136 F.3d 830, 833 (D.C.Cir.1998). Notwithstanding the summary judgment burden, any doubt with regard to a duty to defend is resolved in favor of the insured. *See Continental* at 895; *American Continental Insurance Co. v. Pooya,* 666 A.2d 1193, 1198 (D.C.1995) (internal citations omitted).

## C. *Lumbermens' Duty to Defend*

The coverage clause of the insurance policy provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of a) bodily injury, or b) *property damage* to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . .

Def. Shea's Mtn.Sum.J., Exhibit "A".

The policy definitions define an "occurrence" as: "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . ." *Id.*

In addition to the coverage clause, there are exclusionary clauses that must be considered as well. They include exclusions for property damage resulting from the failure of the named insured's product except when such damage is the result of "active malfunctioning"; *id.* ¶ (k); property damage to the named insured's product; *id.* (*l*); property damage to work performed by the named insured; *id.* (m); and, damages for withdrawal of the insured's product from service for a known or suspected defect. *Id.* ¶ (n).

The Complaint in this case seeks declaratory judgment by the Plaintiffs (three insurance companies) of their obligations under different general liability policies. By its very nature it seeks to avoid indemnification. Despite its allegations seeking avoidance, however, the Complaint at least raises the issue of a potentially covered claim: whether or not "property damage" resulted from installation of the allegedly defective isolation pads. Compl. ¶ 72(a). Moreover, this is summary judgment and a record, albeit limited to these issues, has been established and must be considered.

It is undisputed that WMATA was notified on October 15, 1981, that its Office of General Maintenance had discovered that portions of the floating slabs had settled measurably at several locations, that such settlement required the installation of "wood shims," as well as other remedial action "necessary to maintain or reestablish the correct relative height between the running and contact rails." Contractor's Stat.Mat. Facts, Ex. D (Norair Contracting Officer's Decision). Does this constitute "property damage" within the coverage meaning of the policy? The Court believes it does, at least for purposes of the duty to defend.

The remedial measures undertaken were not so simple as replacing a defective lightbulb or removing an improperly designed train-car from service. What allegedly happened here was much more pervasive. Not only did the defective isolation pads cause the track bed to become uneven, but the pads themselves were covered with tons of concrete that had to be removed before they could be replaced. If this were a situation where the only claimed damage was to the defective product itself, the result probably would be different. In this case, however, the defective product is more akin to a boiler in a building that explodes and causes damage to the surrounding area. In that case, not only would the boiler have to be replaced, but repairs to the damaged property would have to be made as well. Though nothing so immediate and dramatic as an explosion oc-

curred here, the failure of the product, nonetheless, allegedly caused property damage to the surrounding area with further damage occurring when the defective product was repaired or replaced.[3] This is sufficient to bring the moving Defendants within the general coverage provisions of the policy for purposes of the duty to defend, and the Court so concludes. If there is any doubt, the Court construes such doubt in favor of the insureds, as is required to do. *Pooya,* at 1198.

### D. *Exclusions Under the Policy*

Lumbermens seeks to invoke several policy exclusions to avoid its duty to defend. None of them is sufficient to overcome this duty. *See Carey Canada, Inc. v. Aetna Cas. & Sur. Co.,* 1988 WL 169287 (D.D.C.1988) (any ambiguity must be construed against the insurer so as not to limit or defeat coverage); *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.,* 484 F.Supp. 1153, 1155 (S.D.N.Y.1980) (insurer has the burden of proving that the facts fall within the policy's exclusionary clauses).

■ The first exclusion ("Business Risk Exclusion") bars coverage for property damage resulting from the failure of the named insured's product except when such damage is the result of "active malfunctioning." See "Policy," ¶ (k). Lumbermens argues that the contractors do not give a supported definition of what constitutes "active malfunctioning." Lumbermens, however, forgets that it is not the contractors' burden to offer such a definition. The burden lies with Lumbermens and it has failed to carry it. *See Commercial Union Ins. Co.,* at 1155. Moreover, even giving the term its ordinary meaning, the Court does not see how this exclusion could apply here. Insofar as the isolation pads, allegedly compressed over time (which is what led to the damage) they probably did, in fact, "actively malfunction" within the meaning of this exclusion. In any event, this exclusion is ambiguous and the Court therefore construes it in favor of the contractors. *See Sturges Mfg. Co. v. Utica Mut. Ins. Co.,* 37 N.Y.2d 69, 371 N.Y.S.2d 444, 332 N.E.2d 319, 322–23 (N.Y.1975) ("active malfunctioning" term is ambiguous and insurer cannot rely upon such term to decline duty to defend).

■ The next two exclusions involve property damage to the named insured's product ("Own Product Exclusion"), "Policy," ¶ (1), and property damage to work performed by the named insured ("Own Work Exclusion"), Policy, ¶ (m). Lumbermens' position is that these exclusions apply insofar as the policy does not cover defective work (installation of the pads) or the product itself (the isolation pads). As already stated, it is not just the product and its installation at issue here, but the alleged damage it caused to other property (*i.e.,* the track bed). Even if Lumbermens ultimately is found to have no duty to indemnify the contractors for the cost of fixing the isolation pads, the other damage allegations (addressed above), trigger its duty to defend on all counts.

■ Finally, Lumbermens relies on the "Sistership Exclusion." Policy, ¶ (n). Under this exclusion there is no coverage for damages that occur when a product is withdrawn from service for a known or suspected defect. Lumbermens' once again relies on its argument that there was no damage to property other than the product itself. The Court, however, as an initial matter fails to see even how this exclusion might apply to the circumstances of this case. There are no allegations that anything was ever taken out of service as a result of the product's alleged failure. To the extent Lumbermens rests its reliance for this exclusion on its "no property damage" argument, that argument has been rejected by the Court with respect to the duty to defend. As a result, this exclusion does not apply.

### E. *Notice, Coverage Period, "Suit Pending"*

■ The remaining arguments relied upon by Lumbermens to avoid providing a defense are all objected to by the contractors not only on their merits but on the basis that they allegedly have been waived. The con-

---

**3.** These findings are made in the context of the liberally construed duty to defend, rather than under a duty to indemnify, which is not before the Court.

tractors object to Lumbermens raising in its opposition (for the first time), arguments that: 1) there was improper notice of the claims; 2) there are no allegations that the claims occurred during the coverage period; and, 3) there is no "suit" pending within the meaning of the policy. If, in fact, this is the case, Lumbermens would be estopped from asserting such defenses at this juncture because they would have waived them by not raising them in the declination of rights letter, or thereafter either in its answer or various cross claims. *Central Armature Works, Inc. v. Am. Motorists Ins. Co.*, 520 F.Supp. 283, 288 n. 4 (D.D.C.1980) (Barrington Parker, J.).

Moreover, those defenses would fail even on their merits with respect to the duty to defend. First, with regard to the improper notice defense, Lumbermens states that it did not become aware of the contractors claims until the cross-claims were filed in this action, whereas the contractors had been aware of WMATA's claims, in some instances, as early as 1982. Lumbermens Opp. to Sum J. at 15. The contractors, however, would have had no reason to provide Lumbermens with notice prior to 1995 because, up to that point, Plaintiff Crum and Foster had been defending them in the pre-filing WMATA actions. Smith Aff. at ¶ 21–22.

Second, Lumbermens argues that the contractors have made no allegations that the claims occurred within the three-year policy period. To the extent that the isolation pads allegedly were defective when installed and the policy indisputably was in effect at that time, the possibility that property damage occurred during the three-year period is sufficient to trigger the defense duty. Further, having only now been apprised that an issue exists with regard to the coverage period, any failure by the contractors explicitly to argue this point in their motions is understandable given Lumbermens' failure to raise the coverage period previously. Such maneuvering by Lumbermens provides further grounds for the Court's estoppel ruling.

The third basis argued by Lumbermens is that the actions instituted by WMATA are not "suits" within the meaning of the policy. This is not correct. An insurance company's duty to defend would only make sense if it were required to defend where legally important proceedings are being litigated, whether that occurs in a court or before an administrative body. Whatever the forum, if the outcome has some consequence, either financial or legal, it would be foolish not to require an insurance company to defend from the outset if the insured otherwise is covered under a policy. *See Avondale Indust., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1206 (2d Cir.1989) (adversarial administrative proceeding is considered a "suit" with respect to a duty to defend).

### F. Motions to Supplement and to Strike

At the oral argument on these motions on October 12, 1998, the Court requested that the contractors supplement the record with any documentation concerning the issue of notice. The contractors (Granite Construction Company and Dillingham Construction Company) did so in a motion to supplement filed on October 19, 1998. Lumbermens filed a response to that motion on October 29, 1998, which was followed by another contractor's motion, this one to strike Lumbermens response. Lumbermens, of course, opposed this motion as well, which in turn, drew a reply from the contractors on December 7, 1998.

The Court will not strike the filed memoranda. While the parties should not construe the Court's action here to allow multiple filings in the future, here at least, the Court prefers to give the parties every opportunity to advance their cause before such a significant ruling is made. The motion to strike, therefore, is denied.

### CONCLUSION

The issue before the Court today is not whether Lumbermens owes a duty to indemnify the contractors but whether or not, on the pleadings and the record before the Court, it has a duty to defend in this action and in the pre-filing proceedings. For the reasons stated above, the Court concludes that this duty has been triggered and the contractors, therefore, are entitled to summary judgment on this sole issue. An appropriate Order accompanies this memorandum.

### ORDER

Upon consideration of the motions before the Court, the oppositions and replies thereto, the oral argument held on October 20, 1998, and for the reasons stated in the attached memorandum of law, it is by the Court this 21st day of December 1998,

**ORDERED** that the Defendant Contractors' three separate motions for summary judgment (referenced in fn. 1 of the attached memorandum) on the issue of Lumbermens' duty to defend are **GRANTED and an evidentiary hearing on the amount already expended on such defense shall be scheduled at a status hearing to be held on February 2, 1999, at 2:00 p.m.;** it is further

**ORDERED** that the Defendant contractors' motion to strike is **DENIED;** and it is further

**ORDERED** that the Clerk shall send copies of this Memorandum and Order.