GEORGE FLETCHER AND ANOTHER, SUCCESSORS IN INTEREST TO H. C. FLETCHER, DECEASED, v. T. J. SCOTT.[1]

January 14, 1938.

No. 31,457.

[1]Reported in 277 N. W. 270.

*Schroeder & Schroeder,* for appellant.
*H. N. Jenson,* for respondents.

STONE, JUSTICE.

Defendant appeals from a judgment nullifying the sale under execution of the homestead of plaintiffs H. C. and Mayme Fletcher, husband and wife. Pending the appeal, came the end of Mr. Fletcher's life. George Fletcher was substituted as his successor in interest.

The judgment under which defendant Scott levied upon and sold the Fletcher homestead awarded him recovery for unpaid salary and commissions earned by him while in the employ of Mr. Fletcher as an automobile salesman. The whole case turns upon whether Mr. Scott's judgment was for a "debt incurred to any laborer or servant for labor or service performed" within the meaning of art. 1, § 12, of the state constitution. That section reads thus:

"A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law. Provided, however, that all property so exempted shall be liable to seizure and sale for any debts incurred to any person for work done or materials furnished in the construction, repair, or improvement of the same;

and provided further, that such liability to seizure and sale shall also extend to all real property for any debt incurred to any laborer or servant for labor or service performed."

The statute implementing that section (2 Mason Minn. St. 1927, § 8336) is in effect that the exemption of a homestead shall not include claims "for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants."

The two provisos qualifying the homestead exemption were both added by the same amendment in 1888. The question now is whether Mr. Scott's unpaid salary and commissions as auto salesman are embraced within the constitutional phrase "any debt incurred to any laborer or servant for labor or service performed."

Unhesitatingly we answer in the negative. Were the law otherwise, the homestead exemption is gone, not only as to claims of the "laborer or servant," who was its only stated beneficiary, but also as to those of the executive drawing a salary of such dimensions as to make him the envy of princes. As long as a business is conducted by an individual or a partnership (Lindberg v. Johnson, 93 Minn. 267, 101 N. W. 74), its employes, wherever and however they serve, could reach the home or homes of the owner or owners with a judgment for unpaid compensation. The proprietors of such a business, domiciled in Minnesota, would hold their homesteads subject to the claim of their employes in foreign parts.

Such a result would be astounding to say the least, for heretofore our policy "always" has been to give the homestead exemption law "a liberal construction in favor of the homestead owner, as evidencing a public policy of the state to preserve to the owner a home and place of habitation." Lahti v. Peterson, 175 Minn. 389, 392, 221 N. W. 534, 535. Without stressing at all the sometimes questionable concept of liberal as against that of strict construction (State ex rel. City of St. Paul v. M. St. P. & M. Ry. Co. 190 Minn. 162, 251 N. W. 275), we hold that the homestead exemption survives as against the claims of large categories of the owner's employes, for wages, salaries, and other similar compensation.

■ There is nothing in Lindberg v. Johnson, 93 Minn. 267, 101 N. W. 74, or Lahti v. Peterson, 175 Minn. 389, 221 N. W. 534, which even remotely justifies the judicial destruction of a substantial portion of the homestead exemption which would be wrought by an opposite decision. The judgment involved in Lindberg v. Johnson was one obtained by the creditor "as a laborer" for the judgment debtors "as partners in their business of scavengers." The sole argument for the plaintiff, claiming his homestead exempt from the judgment, was that the constitution [93 Minn. 268] "makes the homestead liable for seizure and sale only for debts incurred to any person for work done and material furnished in the construction, repair, or improvement of the same; and, further, that the homestead is not so liable for any debt incurred to any laborer or servant [whatsoever] for labor or services performed." The decision negatived that contention and also another, erroneously allowed by the trial court [93 Minn. 269], "that a homestead is not liable for the payment of a debt incurred by the owner thereof as a member of a copartnership." No other issue was involved. Nothing in the decision, by any legitimate interpretative expansion, may be considered as touching any other issue. There was no occasion to consider, even collaterally, the coverage of the constitutional phrase "laborer or servant."

In Lahti v. Peterson, 175 Minn. 389, 391, 221 N. W. 534, the only question considered and decided was whether the involved judgment was one for labor and services, or upon Lahti's liability "upon his contract to pay the debts of Parviainen." The latter view was taken, and that solved the problem favorably to Lahti's claim of exemption. The concluding sentence of the opinion is not to be considered apart from its context, nor in divorce from its subject matter. That sentence is this [175 Minn. 393]: " 'Their laborers and servants' clearly refers to *their* employes." (We italicize the possessive pronoun because of its significance.) That means only that the laborers and servants entitled to avoid the exemption must be the employes of the judgment debtors rather than the employes of someone else. It did not mean, and by no stretch of fancy can properly be argued to mean, that the phrase "laborer or servant"

was intended or can be held to include "employes" of all sorts. The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question. Carroll v. Carroll, 16 How. (U. S.) 275, 14 L. ed. 936; Barrett v. Smith, 183 Minn. 431, 436, 237 N. W. 15.

■ There is abundance of law elsewhere and some here upon the same or related problems. The question in Wildner v. Ferguson, 42 Minn. 112, 113, 43 N. W. 794, 795, 6 L. R. A. 338, 18 A. S. R. 495, was whether an "agent for the garnishee, selling its goods by sample, driving about for that purpose with his own horse and buggy, receiving a weekly salary," was a "laboring man" within the meaning of a statute (G. S. 1878, c. 66, § 310) exempting from garnishment the wages of "any laboring man or woman." Recognizing that "all men who earn compensation by labor or work of any kind, whether by head or hands, including judges, lawyers, bankers, merchants, officers of corporations and the like, are in some sense 'laboring men,'" the court yet held that the phrase "laboring man" in the involved statute included only "those who are laboring men or women in the sense that their work is manual." Among the cases cited is Wakefield v. Fargo, 90 N. Y. 213. The statute there construed imposed liability upon stockholders of a corporation for debts of the latter to "laborers, servants and apprentices." [Laws N. Y. 1848, c. 40, § 18.] It was held [42 Minn. 114] that the word "laborers" so used included those whose services were manual or menial and excluded accountants and those who "had charge and control of the business." Another case so cited is Jones v. Avery, 50 Mich. 326, 15 N. Y. 494, holding that a traveling salesman selling by sample was not included by the constitutional provision making stockholders of a corporation liable for its labor debts. Several other cases are cited to the proposition that ordinary agents, superintendents, and secretaries of corporations do not come within the meaning of the term "laborers" when so used.

It being clear under the rule of Wildner v. Ferguson, 42 Minn. 112, 43 N. W. 794, that if Scott or any other general salesman could not claim to be a "laborer" so as to have an exemption from garnish-

614

ment of his compensation, we cannot say that he is a laborer for the purpose of reaching the homestead of his employer.

The word "servant" may be generic or restrictive. Depending upon its use, it may indicate anything from a slave, doing the lowliest form of menial tasks, to an employe, including the highest form of executive functionary. See 7 Wd. & Phr. (1 ser.) p. 6422, *et seq.* But, as used in exemption and similar laws, its meaning is restricted to those who perform manual labor or menial tasks. A traveling salesman is not a "servant" within the meaning of the bankruptcy act [§ 64b(4), 11 USCA, § 104, note], according priority of payment to "servants" (In re Scanlan [D. C.] 97 F. 26), nor under a statute making stockholders liable for moneys due "laborers, servants, clerks, and operatives" of an insolvent corporation (Hand v. Cole, 88 Tenn. 400, 12 S. W. 922, 7 L. R. A. 96). Under an act giving preference against an intestate's estate to "servants" for wages, servant was held to mean "hirelings" who make a part of a man's family doing menial tasks. In re McKim's Estate, 3 Pa. L. Jour. 502, 508.

Its context may narrow or broaden the meaning of almost any word. So, under an act giving preference to one creditor over another except for wages of "laborers, servants, or employes," the three words did not mean only persons who do manual work, because such construction would make their use tautological. Conlee Lbr. Co. v. Ripon Lbr. & Mfg. Co. 66 Wis. 481, 29 N. W. 285. But where the word "servants" was used in conjunction with "laborers" in an act making stockholders liable for all debts due to "laborers and servants," the term is limited in meaning by its association with "laborers" according to the maxim *"noscitur a sociis."* Aikin v. Wasson, 24 N. Y. 482, 484.

The constitutional amendment now controlling imposed a limitation on the long established homestead exemption. Its affirmative effect should not be extended by construction beyond its stated scope. The latter, significantly, stops with the claims of laborers and servants. It does not include employes generally and of all sorts. If that had been the intention, the one word "employe" would certainly have been used instead of the two, "laborer or

servant." Both legally and colloquially, "employe" ordinarily has a broader and more inclusive reach than either "laborer" or "servant." In view of the background and subject matter of the constitutional amendment; because of its descriptive and limiting words, we conclude that its framers intentionally did not use the word "employes" because they did not propose to subject homesteads to the claims of all employes of the owner. On the contrary, they chose the limiting phrase "laborer or servant." We must not now strike down the limitation so obviously intended.

It is significant that the constitutional provision in favor of "any laborer or servant" is further qualified by the requirement that the claim itself must be for "labor or service performed." It is not enough that the claimant shall be a laborer or servant, but in addition his claim must embrace only "labor or service." The purpose was to exclude the demand, even of a laborer or servant, for materials or merchandise. To hold against the exemption in this case would lead to results of written law so anachronistic as not to be allowed unless there is no doubt that they were intended. That they were not intended appears not only from the restrictive phraseology expressing the purpose in the law, but also from our whole state policy concerning homesteads. A significant part of the latter is the statute (2 Mason Minn. St. 1927, § 8340) making void any attempted conveyance of a homestead by one spouse in which the other does not join.

There is no occasion here for us to attempt writing a catalog showing those classes of employes who are and those who are not laborers or servants within the meaning of our constitution and statute. There is no reason to discuss the recognized deserts of a so-called "white-collar" employe as distinguished from all or any others. It is a field wherein it is simply impossible in advance of the cases as they arise to project a line of demarcation, of inclusion and exclusion, which will automatically decide the cases as they arise. We have but attempted to search out and declare the general principles which control decision of this case. In many another, in all probability, the question of whether or not the claimant is a laborer or servant with a claim for labor or service will be a

question of fact. It is not so here, for as matter of law the Fletcher homestead was exempt from the claim of defendant.

In consequence, the judgment must be and is affirmed.

HILTON, JUSTICE (dissenting).

While I am ready to concede that the right to seize and sell the employer's homestead, conferred on a "laborer or servant" by art. 1, § 12, was not intended for the benefit of high-salaried executives, I cannot concur in the conclusion that the stated class of beneficiaries was intended to be limited only to those performing manual or the lesser forms of menial services, and that the defendant in the instant case is not a member of the favored class. The fundamental aim in construing the constitution is to ascertain and effectuate the intention of the people in adopting it. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 1576. The same principle should be of major importance in the interpretation of constitutional amendments.

It may be conceded that these provisos were intended for the benefit of a definite class of employes to provide a means of satisfying debts of a certain nature. Insofar as that class includes "laborers" and relates to debts incurred for "labor" performed, little difficulty is experienced in classifying the individual employe and his claim as being without or within the terms of the provisos. It is generally agreed that the terms "laborers" and "labor" are usually associated with work which is primarily "manual," and, as stated in the majority opinion, the defendant Scott is clearly not a "laborer" within the meaning of art. 1, § 12.

However, the right afforded by the amendment in question is not limited to a "laborer" for "labor" performed, but is also extended to a "servant" for "service" performed. And, in my opinion, the inclusion of the terms "servant" and "service" indicates a very plain intent to give the right of homestead seizure and sale to others in addition to just the "laborer," and for claims for work other than merely "labor." As already stated, the latter terms have a definite, well-defined, and generally accepted meaning. If the amendment was intended to be so limited as to include only claims of the

"laborer" for "labor" performed, there was no occasion for the addition of other terms. Some additional force must be given the latter or their use in this instance becomes meaningless.

We come then to the question of what employes in addition to laborers were intended to be included in the terms "laborer or servant," and more specifically, the term "servant." In answering this question the latter term should be limited in meaning by its association with "laborer." Thus using the term "laborer" it may safely be assumed that "servant" refers to an employe who is in the same general class of workers. In other words, the intent was to include under the additional term "servant" he who performs work, other than manual, but whose occupation, giving due regard to all the conditions of the employment, is substantially on the same general level as that of the average laborer. If under all the circumstances, it appears that the employment of a given employe is within the limits of that level so it may be said that he belongs to the same class of employes as the laboring man, then he should be given the benefit of the right afforded by art. 1, § 12.

In the instant case, the trial court found that the judgment on which Scott levied execution was based on a claim for "salary" for "services" rendered in Fletcher's "employ." During the five months of his employment he earned an average of less than $100 a month. Granting that each case must depend on its own facts, I respectfully submit that a consideration of Scott's employment leads to the conclusion that he belonged in the same general class of employes as "laborers" and definitely places him, as a "servant," within the class of "laborers and servants" for whose benefit the amendment in question was adopted. To give the garage mechanic a right to seize and sell the homestead of his employer to satisfy his claim for unpaid wages and deny the same right to the salesman who works for the same employer, in the same building, and who *is in the same general class of employes,* does not seem in accord with the general purpose of the amendment. I cannot believe that it was the intent to benefit one and ignore the other. With due deference to our policy of strict construction of homestead exemption laws in favor of the homestead owner, the following language of Mr. Chief

618

Justice Start in Lindberg v. Johnson, 93 Minn. 267, 270, 101 N. W. 74, 75, is particularly applicable here:

"It is true, homestead exemptions are to be liberally construed for the benefit of the debtor and his family, but the express constitutional exception for the benefit of the wage-earner and his family must also be liberally construed. *In neither case is the benefit to be defeated by any strict construction or refinement of legal reasoning.*" (Italics supplied.)

