*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-0216

MATTHEW FOGG, APPELLANT,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAB-454-12)

(Hon. Anthony C. Epstein, Trial Judge)

(Submitted January 9, 2014                    Decided April 24, 2014)

*Douglas R. Taylor* for appellant.

*Griffin Vann Canada, Jr.*, and *Bradford S. Bernstein*, Miles & Stockbridge P.C., were on the brief, for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  Appellant Matthew Fogg seeks review of an order granting summary judgment to appellee Fidelity National Title Insurance Company ("Fidelity").  Fogg specifically challenges the trial court's order on the basis that the trial court erred in:  (1) determining that Fidelity had no duty to defend Fogg in a third-party lawsuit pursuant to the "eight corners rule";

and (2) failing to conclude that Fidelity owed a fiduciary duty of disclosure to Fogg. We affirm.

## I.

In 2008, Matthew Fogg loaned Newbirth Investment & Development Company ("Newbirth") $700,000 for the purchase of a commercial property located at 2914 Sherman Avenue, N.W. ("the property"). The loan was secured by the property and was to be repaid in two installments, the first of which was due on March 1, 2009. Newbirth purchased the property from Sherman Avenue Management Corporation ("SAMC") on October 31, 2008. Worldwide Settlements ("Worldwide") acted as the settlement agent for that transaction and provided Newbirth with title insurance from Fidelity.

Newbirth later defaulted on the loan from Fogg. Rather than institute foreclosure proceedings against Newbirth, Fogg agreed to purchase the property outright in consideration for the sum of $225,000 and cancellation of Newbirth's debt. Milestone Title ("Milestone") acted as the settlement agent for this second sale. As part of its services, Milestone performed a title examination, finding that Fogg had the only lien of record against the property. Additionally, at the

settlement on April 8, 2009, Fogg purchased title insurance from Fidelity, through its agent Milestone, in the face amount of $225,000 and paid a premium of $1,282.50.

On June 18, 2009, SAMC filed suit against multiple defendants, including Fogg, in the Superior Court of the District of Columbia. SAMC alleged that it had made a $200,000 loan to Newbirth that was now in default and sought to have an equitable lien imposed on the property because the deed of trust that was supposed to secure SAMC's loan was never recorded. The complaint alleged that "[w]hen taking title to the Property, Fogg was aware of [SAMC's] loan to Defendant Newbirth and [SAMC's] claim of a security interest in the Property, and . . . Fogg is therefore not a bona fide purchaser for value and without notice of [SAMC's] claim."

Fogg requested that Fidelity defend him in the SAMC lawsuit. Fidelity refused to defend Fogg in the SAMC suit because it determined such a defense was not covered by Fogg's title insurance policy. Fidelity contends that its denial of coverage is supported by paragraph 5(a) of the conditions to the policy and

paragraphs 3(a) and 3(b) of the exclusions from coverage of the policy,[1] which

state in pertinent part:

### CONDITIONS

5.　　DEFENSE AND PROSECUTION OF ACTIONS

(a)　　Upon written request by the Insured . . . the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. *This obligation is limited to only those stated causes of action alleging matters insured against by this policy.* . . . [The Company] shall not be liable for and will not pay the fees of any other counsel. *The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.*

**\*\*\***

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the company will not pay loss or damage, costs, attorney's fees, or expenses that arise by reason of:

3.　　Defects, liens, encumbrances, adverse claims, or other matters:

---

[1] In its initial correspondence with Fogg, Fidelity cited to paragraph 3(a) of the exclusions from coverage of the policy to support its denial of coverage. In its motion for summary judgment, Fidelity additionally cited paragraph 3(b) of the exclusions from coverage of the policy.

(a)    created, suffered, assumed, or agreed to by the Insured Claimant;

(b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy[.]

Fidelity also cited the "eight corners rule," set forth in *Stevens v. United General Title Insurance Co.*, 801 A.2d 61 (D.C. 2002), to support its denial of coverage. The rule states: "[T]he duty to defend is determined generally by the terms of the insurance policy and the allegations in the complaint against the insured[.]" *Stevens*, *supra*, 801 A.2d at 67 (citation and internal quotation marks omitted). Applying *Stevens*, Fidelity relied on paragraphs 5(a) and 3(a) of the relevant portions of the insurance policy, and it looked to the facts alleged in the SAMC complaint to determine that Fogg's alleged knowledge of SAMC's security interest excluded Fogg's request for defense from coverage.

Fogg retained his own counsel after Fidelity declined to represent him and ultimately prevailed in the SAMC suit after a jury found that Fogg was in fact a bona fide purchaser for value, without notice of SAMC's purported security interest.  Fogg then brought the instant lawsuit against Fidelity, seeking to recover $950,000 in damages for breach of contract and breach of fiduciary duty.  Fidelity moved for summary judgment as to all counts, arguing that paragraphs 3(a) and

3(b) of the exclusions from coverage to the policy excluded defense of the SAMC suit from coverage. Additionally, Fidelity argued that paragraphs 15(a) and 15(b) of the conditions to the policy expressly limited Fidelity's liability to the terms of the insurance contract. Finally, Fidelity argued that no fiduciary relationship exists between a title insurer and insured. Paragraphs 15(a) and 15(b) of the conditions to the policy state in pertinent part:

CONDITIONS

> 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT
>
> (a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.
>
> (b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

On January 29, 2013, the trial court granted Fidelity's motion for summary judgment on the basis that defense of the SAMC lawsuit was excluded from coverage by paragraph 3(b) of the exclusions from coverage to the policy, and that Fogg's breach of fiduciary duty claim, which he argued was not based on the title insurance policy, was precluded because under the "express, unambiguous language of [paragraph] 15(b) . . . '[a]ny claim of loss or damage that arises out of

the status of the [t]itle or by any action asserting such claim shall be restricted to [the] policy.'"

## II.

### A.

Fogg raises two issues on appeal. We first address his contention that Fidelity breached a fiduciary duty of disclosure. We note at the outset that Fogg's breach of fiduciary duty claim is not based on the terms of the insurance policy, as he concedes in his brief. Nonetheless, Fogg seeks to establish: (1) that Worldwide, which acted as the settlement agent for the first sale of the property from SAMC to Newbirth, had knowledge of a "secondary loan transaction"; (2) that knowledge should be imputed to Fidelity because Worldwide was authorized to issue title insurance on Fidelity's behalf; and (3) that Fidelity owed Fogg a fiduciary duty of disclosure beyond the terms of their contractual relationship.

The policy plainly limits a claim for loss or damage to its terms as set forth in paragraphs 15(a) and 15(b) of the conditions to the policy. While Fogg concedes that "there is no dispute over the terms and provisions of the [insurance]

policy," he argues that Fidelity had a fiduciary duty of disclosure based on an "apparent conflict of interest" that arose because Fidelity issued title insurance to two buyers of the same property in two separate transactions. We agree with the trial court that, on its face, there is no conflict of interest when an insurer issues title insurance to different buyers of the same property. We are not persuaded that the act of issuing title insurance, and thereby entering into a contractual relationship with the insured, creates a fiduciary duty beyond the terms of the title insurance policy. Consequently, Fogg's breach of fiduciary duty claim fails.

Moreover, even if the policy covered Fogg's breach of fiduciary duty claim, which it does not, Fogg ignores another provision of the policy — the "Schedule B Exceptions from Coverage" — which state in paragraph 6 that any title search and examination conducted in connection with the issuance of a title insurance policy is solely for the benefit of Fidelity. Accordingly, the title examination that Worldwide conducted at the time of the first sale was not for Fogg's benefit, and he cannot use that title examination as the factual predicate for his breach of fiduciary duty claim.

**B.**

We turn next to Fogg's argument that the trial court erred in denying him coverage in the third party lawsuit and in granting summary judgment in favor of Fidelity by relying on *Stevens*. Fogg argues that the "eight corners rule," set forth in *Stevens*, does not apply in his case because his case is distinguishable from *Stevens*. Alternatively, he argues that *Stevens* should be overruled. We disagree.

"In reviewing a grant of summary judgment[,] . . . this court must independently review the record to determine whether genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law." *Stevens*, *supra*, 801 A.2d at 65–66 (citations, internal quotation marks, and brackets omitted). We review the record in the light most favorable to the non-movant, and any doubt regarding the existence of a factual dispute is to be resolved against the movant. *Id*. at 66. An insurance policy is a contract that this court construes according to contract principles. *Id*. "Where insurance contract language is not ambiguous, summary judgment is appropriate because a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Id.* (citations, internal quotation marks, and brackets omitted).

We are unpersuaded by Fogg's attempts to distinguish his case from *Stevens*. Contrary to Fogg's contention, *Stevens* is applicable to the instant matter because the facts are very similar and the insurance policy language is identical to the policy language at issue in this case.[2] In *Stevens*, *supra*, 801 A.2d at 67, we reiterated that an insurance company's "duty to defend depends only upon the facts as alleged to be, so that the insurer's obligations should be measured by comparing the policy it issued with the complaint filed in the underlying case." (citation, internal quotation marks, and brackets omitted); *see also Levelle, Inc. v. Scottsdale Ins. Co.*, 539 F. Supp. 2d 373, 377 (D.D.C. 2008) ("District of Columbia courts follow the so-called 'eight corners rule' with respect to insurance coverage disputes." (citation omitted)). Furthermore, "[t]he obligation to defend is not affected by facts ascertained before suit[,] or developed in the process of litigation[,] or by the ultimate outcome of the suit." *Stevens*, *supra*, 801 A.2d at 67 (internal quotation marks omitted) (citing *Boyle v. Nat'l Cas. Co.*, 84 A.2d 614, 615 (D.C. 1951)). Based on these considerations, our jurisdiction, like the majority

---

[2] Fogg attempts to distinguish his case by arguing that the underlying complaint in *Stevens* alleged active or intentional deception on Stevens' part in that Stevens knew of a prior contract for sale but induced the owner to ignore that contract and sell the property for a higher price. In contrast, Fogg claims that the underlying complaint in this case mentioned only Fogg's knowledge of a secondary lien without any discussion of how he obtained that knowledge, suggesting that Fogg played a more passive role than Stevens, or, at a minimum, did not intentionally disregard SAMC's security interest when purchasing the property. This argument is not persuasive.

of jurisdictions, adheres to the "eight corners rule," which has been explained as follows:

> Under the 'eight corners rule,' an insurer's duty to defend is determined by comparing the complaint . . . with the policy. If the facts alleged in the complaint . . . would give rise to liability under the policy if proven, the insurer must defend the insured. . . . The rule potentially allows an insurer to deny its insured a defense even if the insurer is aware of facts which, if pleaded, would entitle the insured to a defense . . . .

*Id*. at 66 n. 4 (citation and brackets omitted). Accordingly, *Stevens'* "eight corners rule" is directly applicable to Fogg's case.

First, the insurance contract, in paragraph 3(b) of the exclusions from coverage from the policy, plainly excludes "loss or damage, costs, attorneys' fees, or expenses that arise by reason of . . . [d]efects, liens, encumbrances, adverse claims, or other matters . . . not Known to [Fidelity], not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant . . . ." Second, the complaint against Fogg alleged in paragraph 22 that "Fogg was aware of [SAMC's] loan to . . . Newbirth and [SAMC's] claim of a security interest in the Property[.]" SAMC's claimed security interest constitutes a "lien, encumbrance, [or] adverse claim," and by alleging that Fogg "was aware," SAMC alleged actual knowledge of its security interest. Third, Fidelity denies knowledge of SAMC's claimed security interest. Fourth, SAMC admitted that its deed of trust was never

recorded, and Milestone's title search revealed that the only lien against the property was Fogg's. Consequently, because of the paragraph 3(b) exclusions from coverage, Fogg's alleged knowledge of SAMC's unrecorded security interest, and Fidelity's lack of knowledge regarding the same, we conclude that Fidelity had no duty to defend Fogg.

Fogg alternatively asks us to overrule *Stevens* by adopting a "factual exception test" to the "eight corners rule." That test, as explained in *Fitzpatrick v. American Honda Motor Co., Inc.,* 575 N.E.2d 90, 93 (N.Y. 1991), upon which Fogg relies, would "require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage[.]" *See also Stevens*, *supra*, 801 A.2d at 70. We are not persuaded that Fidelity had actual knowledge of any outside lien, especially in light of the fact that Milestone's title examination revealed nothing more than Fogg's security interest in the property.

Even if Fidelity knew of some outside lien, we decline to adopt the "factual exception test." *See Stevens*, *supra*, 801 A.2d at 71; *see also M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court[.]" (footnote omitted)). We passed on a previous opportunity to adopt the "factual exception test" by reference to countervailing policy

considerations in favor of the "eight corners rule," because the "factual exception test" would cause uncertainty for insurers who would "be less clear as to what, if any, investigation [they] must make into a demand to defend and when it is permissible to decline representation." *Stevens*, *supra*, 801 A.2d at 71 (citing *Fitzpatrick*, *supra*, 575 N.E.2d at 96–97 (footnote omitted) (Alexander, J., dissenting)). We were also wary of the potential for additional collateral proceedings. The "factual exception test" would obligate courts "to look beyond the allegations in the complaint to discover the 'actual' facts, or at a minimum whether the insurer 'knew' or perhaps even 'should have known' of such 'actual facts.'" *Id*. Finally, we expressed concern over the possibility that the "factual exception test" could "place the insured in the position of dictating the theory of the action[.]" *Id*. This could "conceivably requir[e] the carrier to defend a claim the plaintiff has no intention of asserting merely because allegedly there are 'facts' which support such a claim." *Id*. The facts of this case and our precedent do not counsel us to otherwise adopt the "factual exception test."

Accordingly, we affirm the judgment of the trial court.

*So ordered.*